JOHN NERO, PLAINTIFF, v. WILLIAM F. HYLAND, AT-
TORNEY GENERAL OF THE STATE OF NEW JERSEY,
DEFENDANT.

Superior Court of New Jersey
Law Division

Decided October 21, 1975.

538

*Mr. William K. Dickey* for plaintiff.

*Mr. Michael A. Santaniello* for defendant, *Mr. William F. Hyland,* Attorney General of New Jersey, attorney.

Rizzi, A. J. S. C. This is an action in lieu of prerogative writs in which plaintiff seeks a judgment granting him access to a character investigation of himself, prepared by the New Jersey Division of State Police at the request of both Governor Brendan T. Byrne and defendant William F. Hyland, Attorney General of New Jersey. The investigation was conducted under the direction of the Attorney General for the purpose of providing the Governor with information that would assist him in deciding whether to appoint plaintiff to a position in State Government. The case now comes before the court on cross-motions for summary judgment.

The principal question presented is whether plaintiff has either a statutory or common law right to require defendant to disclose the contents of the character investigation.

Before reaching the critical issue herein presented, the court must first be satisfied that the document sought is a public record. If it is not, plaintiff would have neither a statutory nor common law right of access to the report in question. *DeLia v. Kiernan,* 119 *N. J. Super.* 581 (App. Div. 1972).

*N. J. S. A.* 47:1A–2, commonly known as the "Right to Know Law," defines public records as

* * * all records *which are required by law* to be made, maintained or kept on file by any board, body, agency, department, commission, or official of the State * * * [Emphasis supplied]

Compilation of the character investigation which plaintiff seeks in the instant case is totally within the discretion of the Governor and Attorney General and is not required to be

prepared or kept by any statute, rule or regulation, and therefore the plaintiff's claim to the document would be denied if the Right to Know Law was the exclusive source of the definition of a "public record."

Plaintiff, however, urges that *N. J. S. A.* 47:3–16, the Destruction of Public Records Law, is to be read *in pari materia* with *N. J. S. A.* 47:1A–2 in ascertaining the meaning of "public record." In line with the approach of the Appellate Division in *Citizens for Better Ed. v. Camden Bd. of Ed.*, 124 *N. J. Super.* 523 (App. Div. 1973), this court agrees with the plaintiff's contention. In *N. J. S. A.* 47:3–16 "public record" is defined, in pertinent part, as

> * * * any paper, written or printed book, document * *.* that has been received by any such officer, commission, agency or authority of the State * * * in connection with the transaction of public business and has been retained by such recipient or its successors as evidence of its activities or because of the information contained therein.

Considering these statutes *in pari materia, Citizens for Better Ed., supra* at 529, this court concludes that the document in question qualifies as a public record. The character investigation was received by the defendant, a state officer, who has retained the documents for the information contained therein.

Having so determined, does the legal classification of the document as a public record automatically confer to the plaintiff the right of access, either under the statutory or common law, to the character investigation?

In resolving this question, the court starts with the statute, *N. J. S. A.* 47:1A–1. It states in relevant part that

> * * * public records shall be readily accessible for examination by the citizens of this State, with certain exceptions, for the protection of the public interest.

This statute makes available to the general public official records of government, with the right to inspect and obtain

copies of those records. It is also clear from the statute that the public's right of access to public records is not an unbridled right, but, as the statute indicates, subject to "certain exceptions, for the protection of the public interest." See *Guarriello v. Benson,* 90 *N. J. Super.* 233, 238 (Law Div. 1966).

Other exceptions to the disclosure requirement are found in *N. J. S. A.* 47:1A–2. This statute states, in another relevant portion:

Except as otherwise provided in this act or by any * * * *executive order of the Governor* * * * or by any regulation promulgated under the authority of any statute or executive order of the Governor, all records which are required by law to be made, maintained or kept on file by any board, body, commission of authority created pursuant to law by the State * * * shall, for the purposes of this act, be deemed to be public records. [Emphasis supplied]

It is undisputed that, pursuant to the foregoing authority, former Governor Richard J. Hughes issued Executive Order No. 48 which directly dealt with investigatory files of the New Jersey State Police. That order provides, in pertinent part, that:

1. No person having custody of State Police investigative files shall turn over the same to any other person who is not a member of a duly-recognized law enforcement agency unless ordered to do so by a court of competent jurisdiction or by the Governor of the State of New Jersey.

2. No person shall divulge the contents of those files to any other person who is not a member of a duly-recognized law enforcement agency unless ordered to do so by a court of competent jurisdiction or by the Governor of the State of New Jersey, where the release of such information is likely to subject witnesses or other persons to physical harm, threats of harm, bribes, economic reprisals and other intimidation. No information shall be divulged where the maintenance of secrecy regarding informants is required for effective investigation of criminal activity or the protection of confidential relationships and privileges recognized by law.

The character investigation sought by the plaintiff in the case at hand was conducted by the New Jersey Division

of State Police and would, therefore, appear to be exempt from disclosure under Executive Order No. 48.

The right of the Governor, by executive order, to exclude public records from disclosure in accordance with *N. J. S. A.* 47:1A–2, and the right of the courts to create exemptions are circumscribed by the last phase of *N. J. S. A.* 47:1A–1, "for the protection of the public interest," and the interpretation given that section by our Supreme Court in *Irval Realty, Inc. v. Bd. of Public Utility Comm'rs,* 61 *N. J.* 366 (1972). In that case plaintiffs were involved in civil actions against a gas company to recover for property damage and wrongful death resulting from gas explosions. Plaintiffs sought to inspect accident and investigative reports prepared by defendant's own staff that had been exempted from public disclosure by defendant's regulation adopted pursuant to an executive order. The court found that

* * * the Legislature did not intend that the power of excluding records from the public domain, given to the Governor, and by him delegated to departments in the executive branch of government, should be unlimited. Rather we concur in the view that the power was intended to be exercised only when necessary for the protection of the public interest. [at 374]

The court then concluded that plaintiff's interest in seeking compensation for loss occasioned by the explosions outweighed the interest of the public in maintaining the confidentiality of the records. Relying upon the *Irval* approach to the problem, this court, nevertheless, reaches a different result for the reasons hereinafter stated. See also *Accident Index Bureau, Inc. v. Hughes,* 46 *N. J.* 160 (1965).

The documents sought herein involve public policy considerations. Background checks of potential government officers are routine and are essential to the maintenance of integrity in government. The police agencies charged with this important task must depend on reports from private citizens. In order to gather this necessary information investigatory files such as the one before this court of neces-

sity must be kept confidential in order to convince citizens that they may safely confide in law enforcement officials. Based upon these considerations alone, plaintiff is not entitled to the relief he seeks.

In holding against plaintiff in the instant case, this court finds further support for its conclusion in *Koch v. Department of Justice,* 376 *F. Supp.* 313 (D. C. 1974). There an action was brought by three Congressmen under the Freedom of Information Act, 5 *U. S. C.* 552, seeking access to all records, files and other information pertaining to themselves maintained by the Federal Bureau of Investigation. In finding that the background checks constitute "investigatory files compiled for law enforcement purposes" within the seventh exemption to the Freedom of Information Act, 5 *U. S. C.* 552(b)(7), the court found (at 318) that "collectively they form a vital source of information which may lead to the detection and prosecution of criminal offenses." Although defendant does not claim that the report in question contains allegations of the nature concerning plaintiff, this court feels that the collection of background information would be severely hampered were disclosure required in the case at hand. In view of the important function such reports play in the decision-making process of government officials, the public interest exception, contained in *N. J. S. A.* 47:1A–1, coupled with Executive Order No. 48 which is consonant with that interest, requires nondisclosure of the investigative file sought by plaintiff.

The court is aware of the language of the Supreme Court in *Irval, supra,* directing the trial judge to examine the reports sought prior to rendering a decision. *Irval,* 61 *N. J.* at 375. The record before this court, however, does not show the need for judicial examination of the document in question. The investigative report sought by plaintiff was ostensibly used by the Governor in deciding whether to appoint plaintiff to a government position. To require submission of the investigative report to the trial judge in this

case would mean the creation of an absolute right for judicial examination of matters the Executive deemed contrary to the public interest. While the Executive's determination is not conclusive, *Accident Index Bureau, Inc. v. Hughes,* 83 *N. J. Super.* 293 (App. Div. 1964), aff'd 46 *N. J.* 160 (1965), plaintiff's failure to establish facts indicating reasonable cause for disclosure leads this court to deny plaintiff access to the investigative report without examination.

▇▇ Plaintiff also claims a common law right of access to the investigative report. Like its statutory counterpart, the common law right of a citizen to inspect public records has never been an unlimited one. *Moore v. Mercer Cty. Bd. of Freeholders,* 76 *N. J. Super.* 396, 407 (App. Div. 1962). The right has been subject to the requirement of a lawful, proper and legitimate purpose, and that it not be adverse to the public interest. *Guarriello v. Benson, supra* at 90 *N. J. Super.* 239. For the public policy reasons discussed above, this court is of the view that the common law affords plaintiff no relief.

Accordingly, the court denies plaintiff access to the investigative reports and grants summary judgment in favor of defendant.